ADVANCE HOMES, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Advance Homes, Inc. v. Commissioner
Docket No. 25280-88
United States Tax Court
T.C. Memo 1990-302; 1990 Tax Ct. Memo LEXIS 320; 59 T.C.M. (CCH) 906; T.C.M. (RIA) 90302; June 18, 1990, Filed *320 Decision will be entered under Rule 155. Gene H. Snapp, Jr., John A. Templer, Jr., and Ronni F. Begleiter, for the petitioner. Elizabeth G. Beck, for the respondent. CLAPP, Judge. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a $ 168,105.62 deficiency in petitioner's 1984 Federal income tax. After a concession by respondent, the sole issue for decision is whether petitioner was a personal holding company liable for the section 541 personal holding company tax. All section references are to the Internal Revenue *321 Code for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT We incorporate by reference the stipulation of facts and attached exhibits. At the time the petition was filed, petitioner's principal place of business was in Davenport, Iowa. During 1984, petitioner was a calendar year taxpayer that owned and managed over 600 residential rental units. It also was paid to manage approximately 110 residential rental units owned by Seitz Investment Company (SIC) and Velma Seitz Company (VSC). SIC was a sole proprietorship owned by Allen Seitz (Mr. Seitz), and VSC was a sole proprietorship owned by Velma Seitz (Mrs. Seitz). Mr. Seitz owned no stock in petitioner, but was petitioner's president, treasurer, secretary, and a director. Mrs. Seitz owned 51 percent of petitioner's stock and was a director, but was not employed by petitioner. The three Seitz children owned the 49 percent of the corporate stock not owned by Mrs. Seitz. Pursuant to an oral agreement, petitioner has managed the SIC and VSC properties for a number of years, including the years in issue. Petitioner would collect the rent checks for the properties *322 and deposit them into the SIC and VSC accounts. Petitioner then would withdraw those funds and deposit them into its own general corporate bank account for payment of all expenses relating to the SIC and VSC properties. After payment of these expenses, petitioner would invest any excess SIC or VSC funds in short-term securities in its own name. Petitioner never used these excess funds on its own behalf and did not report these funds on its balance sheet. Robert B. Chatterson (Chatterson) was petitioner's bookkeeper, assistant treasurer, assistant secretary, and controller. He maintained a separate "account receivable" account on the corporate books for SIC and VSC. He entered petitioner's receipt of funds from the SIC and VSC bank accounts as a credit to the SIC or VSC account receivable, and the payment of expenses as a debit to the SIC or VSC account receivable. At the end of each month, Chatterson closed out these accounts receivable and transferred the balances to note payable accounts for SIC and VSC. The balance in the two note payable accounts varied monthly depending upon the receipt of rental income, payment of rental expenses, and payments to the Seitzes. Both VSC *323 and SIC had immediate access to their note payable accounts. For example, during 1984 petitioner wrote checks totalling $ 287,800 to SIC or Mr. Seitz. All of these checks had the words "repayment of loan" or "loan payment" or "note payment." On December 31, 1984, Chatterson drafted and signed a note promising to pay SIC the principal sum of $ 248,013.03, plus 9-percent interest within 13 months. On December 31, 1984, Chatterson drafted and signed a note promising to pay VSC the principal sum of $ 170,914.41, plus 9-percent interest within 13 months. The principal amount of each note equalled the balance in the corresponding note payable account on the dates the notes were executed. Neither of these notes indicated that the liability was petitioner's rather than Chatterson's. Chatterson had drafted and signed similar notes in other years, with the principal amounts equalling the balances in the SIC and VSC accounts at the end of the year. The Seitzes did not know of the existence of these notes. Chatterson never cancelled the notes, nor did he issue new notes to reflect changes in the note payable accounts. The SIC and VSC balance sheets for 1984 showed notes receivable from *324 petitioner for the respective balances in the notes payable accounts. The majority of the funds that petitioner invested in short-term securities were not excess funds of SIC or VSC. For example, at the end of 1984, petitioner's short-term investments totalled well over $ 2 million, yet the sum of the SIC and VSC note payable accounts was less than $ 420,000. For purposes of making the short-term investments, Chatterson did not distinguish between the funds in the SIC and VSC accounts and the funds petitioner received from its own rental housing. Chatterson did not calculate the actual interest rate earned by the short-term investments because he felt that such a calculation would have been "terribly time consuming" due to the different interest rates on different investments with different maturities. Instead, he made an "educated guess" that the average interest rate was 9 percent. Chatterson then applied this interest rate to the balance of the SIC and VSC note payable accounts at the end of each month, accruing the amounts monthly. On December 28, 1984, petitioner wrote a $ 28,229.77 check to SIC and a $ 15,212.70 check to VSC, with these checks reflecting Chatterson's *325 calculation of the interest their funds earned during 1984. Chatterson entered the amounts of the checks as "interest on note" under petitioner's accrued interest payable account and deducted the payments as interest on petitioner's income tax return. The Seitzes reported the total $ 43,442.47 payment as interest income on their 1984 joint Federal income tax return. Petitioner made no other interest payments to SIC, VSC, or the Seitzes during 1984. When the audit occurred, Chatterson went back and determined the actual interest rates on the investments varied from 9.7 percent to 13.38 percent. Prior to the audit, the Seitzes did not know that petitioner's interest payments to SIC and VSC were less than the interest earned by the SIC and VSC funds. OPINION The sole issue is whether during 1984 petitioner was a personal holding company subject to the personal holding company tax of section 541. A corporation (with exceptions not relevant here) is a personal holding company if at least 60 percent of its adjusted ordinary gross income is personal holding company income, and if at any *326 time during the last half of its taxable year more than half of the value of its outstanding stock was owned, directly or indirectly, by or for not more than 5 individuals. Sec. 542(a). The parties agree that petitioner meets the second requirement for personal holding company status because during 1984 all of its stock was owned by Mrs. Seitz and the Seitzes' three children. The parties disagree, however, about whether petitioner meets the first requirement. Petitioner asserts that it merely was the agent of SIC and VSC for purposes of investing the excess SIC and VSC funds. Accordingly, petitioner believes the $ 43,442.47 in interest it paid to SIC and VSC always belonged to SIC and VSC, and should not be included in petitioner's adjusted ordinary gross income. This would result in less than 60 percent of its adjusted ordinary gross income being personal holding company income, and would thus allow petitioner to escape liability for the personal holding company tax. Respondent asserts that petitioner was not the agent of SIC and VSC with regard to its investment of the excess SIC and VSC funds, but instead that petitioner borrowed the excess funds from SIC and VSC at a 9-percent *327 interest rate and invested them for its own account. Accordingly, the $ 43,442.47 in interest that petitioner paid to SIC and VSC should be included in petitioner's adjusted ordinary gross income. This would cause petitioner to be liable for the personal holding company tax because more than 60 percent of its adjusted ordinary gross income would be personal holding company income. The issue in the instant case is essentially the same as that in Van Sickle Development Co. v. Commissioner, T.C. Memo. 1978-161. In that case, a bank allowed certain corporate customers, including the taxpayer, to invest funds in a "federal funds pool." A corporation related to the taxpayer wished to invest in the federal funds pool, and for that purpose issued two checks to the taxpayer. The taxpayer deposited the checks in its checking account and issued its own check to the bank for participation in its own name in the pool. The taxpayer reported the income from the pool as gross income on its return and deducted the amount distributed to the related corporation. We held that it was clear that the related corporation entered into the venture with the intention that the taxpayer *328 would act as its agent. We noted that respondent argued that the agreement between the taxpayer and the related corporation was oral, with no corporate resolutions or minutes of stockholder or director meetings reflecting an agency arrangement. However, because the venture was between closely held family corporations, we did not view the lack of formalities as unusual. We also noted that the amounts invested by the related corporation were always subject to its control, being subject to withdrawal at will. We concluded -- It is well settled that the receipt of money in the capacity of an agent with no gain or benefit accruing to the recipient, is not includable in the recipient's income. The essence of taxable income is the accrual of some gain or benefit to the taxpayer. * * * Since the interest was not gross income to the petitioner, it should not have been characterized as personal holding company or adjusted ordinary gross income. Accordingly, petitioner was not a personal holding company as defined in section 542 for the year in issue. [Van Sickle Development Co. v. Commissioner, 37 T.C.M. 707, 709, 47 P-H Memo T.C. par. 78,611 at 78-702 (1978).] *329 Respondent argues that the instant case can be distinguished from Van Sickle, pointing out that we stated in Van Sickle -- It was understood from the outset that the interest earned on that investment would be shared in proportion to the amounts invested. Petitioner credited interest to the parties at precisely the same interest rate earned by the investment on a daily basis. The evidence also clearly shows that the pro rata percentages were adjusted to reflect this withdrawal and reduction of interest. * * * The petitioner had nothing to gain from the so-called loan. [37 T.C.M. 707, 709, 47 P-H Memo T.C. par. 78,611 at 78-702 (1978).]
Respondent points out that petitioner in the instant case earned between 9.7 percent and 13.38 percent on the SIC and VSC funds, while paying SIC and VSC only 9 percent. Thus, petitioner benefitted from the arrangement, unlike the taxpayer in Van Sickle. However, the quoted language from Van Sickle accurately describes the Seitzes' understanding regarding the arrangement between petitioner and SIC and VSC. The Seitzes testified that it was their intention from the outset that all interest *330 on the SIC and VSC funds would be paid to SIC and VSC. If Chatterson had followed their wishes, petitioner would have shared the interest earned on its short-term investments with SIC and VSC in proportion to the amounts invested. Petitioner also would have credited interest to SIC and VSC at the daily interest rate earned by the investments, and would have adjusted the pro rata percentages to reflect the withdrawal of funds and the corresponding reduction of interest. Accordingly, petitioner would have had nothing to gain from the arrangement. The fact that SIC and VSC were not paid the full amount of interest earned by their funds means that the agency arrangement was not carried out as the Seitzes intended, but does not mean that there was no agency arrangement. Respondent also argues that Commissioner v. Bollinger, 485 U.S. 340 (1988), overruled our holding in Van Sickle that an oral agreement was sufficient to establish an agency arrangement. Respondent states that Bollinger held that there must be unequivocal evidence of the genuineness of a purported agency/principal relationship, and that such evidence should be set forth in a written agreement *331 at the time the particular asset was acquired. Respondent misunderstands Bollinger. While Bollinger did require unequivocal evidence, it did not require that such evidence be set forth in a written agreement. Instead, the Court said in Commissioner v. Bollinger, supra at 349-350 -- It seems to us that the genuineness of the agency relationship is adequately assured, and tax-avoiding manipulation adequately avoided, when the fact that the corporation is acting as agent for its shareholders with respect to a particular asset is set forth in a written agreement at the time the asset is acquired, the corporation functions as agent and not principal with respect to the asset for all purposes, and the corporation is held out as the agent and not principal in all dealings with third parties relating to the asset. * * *
This language does not list requirements for agency status, but rather describes factors which lead to the conclusion that agency status existed in Bollinger. We believe that other factors could be appropriate in other cases. This interpretation is supported by the following language in Commissioner v. Bollinger, supra at 349 *332 -- We see no basis, however, for holding that unequivocal evidence [of genuineness in the corporation-shareholder context] can only consist of the rigid requirements (arm's-length dealing plus agency fee) that the Commissioner suggests. Neither of those is demanded by the law of agency, which permits agents to be unpaid family members, friends, or associates. * * *
We think it unlikely that the Supreme Court would reject certain rigid requirements not required by the law of agency, yet establish another rigid requirement not required by the law of agency. We conclude that Bollinger does not require the existence of a written agency agreement. The Bollinger requirement of unequivocal evidence of the genuineness of a purported agency/principal relationship is satisfied in the instant case. When Chatterson was hired, Mr. Seitz told him that he should keep separate records because the SIC and VSC funds did not belong to petitioner. The Seitzes testified that petitioner did not need funds and had not borrowed any for years, and that neither SIC nor VSC had *333 ever loaned any money to petitioner. In addition, the arrangement was unlike a loan because the level of funds in the SIC and VSC accounts was determined solely by rental income, rental expenses, and withdrawals by the Seitzes. It would be an unusual loan where the borrower has no control over the level of its borrowing. Because SIC and VSC could withdraw funds at any time, the funds must have belonged to them rather than to petitioner. None of the short-term securities were held in the names of SIC or VSC, but this is to be expected since petitioner purchased the securities with pooled funds belonging to itself, SIC, and VSC. Respondent relies heavily upon the existence of the notes to show that petitioner borrowed funds from SIC and VSC. However, Chatterson explained that he executed the notes because, having used a note payable account, he thought he should have something in writing to show the balance at the end of the year. The notes stated that repayment would occur in 13 months, but Chatterson testified that this merely was because they had to have a repayment provision. The checks that Chatterson wrote to SIC and VSC stated "repayment of loan," "loan payment," or "note *334 payment," but these notions were just Chatterson's method of keeping track of the account from which the payments were made. Chatterson's system may have been rather unsophisticated and more like a Rube Goldberg invention than an accepted accounting practice, but it worked. We conclude that the notes and various book entries were nothing but a bookkeeping device used by Chatterson to account for funds held by petitioner as agent for SIC and VSC. Respondent also points out that the minutes of petitioner's December 12, 1985, shareholder meeting state -- Allen V. Seitz, President, pointed out that the Corporation had inadvertently fallen into the Personal Holding Company Income Tax Trap and was subject to penalty taxes. He explained that the policy of the Corporation has always been to conserve cash for future construction projects and future maturing liabilities as any good business does. He further explained that to accomplish this LAUDABLE business purpose, it is necessary to have short-term interest income investments and that this is what the government calls Personal Holding Company Income of Closely Held Corporations.
Respondent asserts that it may be *335 inferred that petitioner invested the SIC and VSC funds in the short-term securities for its own business purposes. However, we read Mr. Seitz's comments to relate only to petitioner's own funds, which comprised the vast majority of its short-term investments. We conclude that petitioner was the agent of SIC and VSC for purposes of investing the excess SIC and VSC funds. Accordingly, petitioner was not subject to the personal holding company tax of section 541. Decision will be entered under Rule 155.